UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------X

MICHELE L. GORMAN and
THOMAS M. GORMAN III,

                                Plaintiffs,

     - against -

KJM FINANCIAL, LLC and PAUL S. BEERS,

                                Defendants.

-----------------------------------------------------------------X

Case No.:

**COMPLAINT**

JURY TRIAL DEMANDED

       Plaintiffs MICHELE GORMAN and THOMAS GORMAN III (collectively, "Plaintiffs"), by and through their attorneys, Marzec Law Firm P.C., as and for their complaint against the Defendants KJM FINANCIAL, LLC ("KJM" or "KJM Financial") and PAUL S. BEERS ("Paul" or "Beers") (collectively, "Defendants"), allege as follows:

## PARTIES

       1.     Plaintiff, MICHELE GORMAN, is an individual and citizen of New York with an address at 4301 Winding Creek Road, Manlius, NY 13104.

       2.     Plaintiff, THOMAS GORMAN III, is an individual and a citizen of New York with an address at 4301 Winding Creek Road, Manlius, NY 13104.

       3.     Plaintiffs Michele Gorman and Thomas Gorman III are married.

       4.     Defendant KJM FINANCIAL, LLC is a New Jersey limited liability company with its principal place of business in Somerset County, New Jersey with an address at 438 Main Street Bedminster, NJ 07921. KJM provides sales and service of life and annuity insurance as well as with college planning and college funds.

       5.     Defendant PAUL S. BEERS is an individual and citizen of Warren County, New Jersey with an address at 40 Glen Eagles Road, Washington, NJ 07882 and is the managing

member and agent of KJM FINANCIAL, LLC. Pursuant to the current FINRA BrokerCheck report, Mr. Beers was a FINRA registered investment advisor (CRD# 1928992) until December 2020. Thereafter, Mr. Beers listed his business activities as "independent insurance agent" and managing member of KJM Finacial, LLC.

6.      Pursuant to FINRA and the SEC, Defendant KJM Financial is not a registered broker-dealer and Paul S. Beers is not a registered investment advisor. Thus, this action and the claims alleged herein are not subject to mandatory arbitration.

## JURISDICTION AND VENUE

7.      The Court has personal jurisdiction over the Defendants in that they are domiciled in the State of New Jersey and substantial events or omissions giving rise to Plaintiffs' claims occurred in the State of New Jersey.

8.      Defendants regularly conduct business and have substantial contacts in the State of New York.

9.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 which provides that district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

10.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction in that there is complete diversity between the parties as Plaintiffs are citizens of, and are domiciled in, the State of New York. Defendant KJM is a domestic limited liability company with its principal place of business in Somerset County, New Jersey. Defendant Beers is the managing member and agent of KJM and is domiciled in Warren County, New Jersey.

11.     The amount in controversy exceeds the sum of $75,000.00 and is believed to be no less than $586,350.00, exclusive of interest and costs.

12.     Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action, because substantial events or omissions giving rise to Plaintiffs' claims occurred in the State of New Jersey, Defendant KJM is a New Jersey limited liability company incorporated under the laws of New Jersey and maintains its principal place of business in Somerset County, NJ. Both Defendants are domiciled in New Jersey and conduct their business and activities from within the State of New Jersey.

13.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to U.S.C. § 1367 because those claims form part of the same case or controversy.

## JURY DEMAND

14.     Plaintiffs demand a trial by jury of all issues so triable in this action.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15.     In 2025, Plaintiffs transferred $586,350.00 to Defendants. That entire sum is unaccounted for and presumed stolen by Defendants.

16.     Plaintiffs first invested money with Defendants starting in December 2010.

17.     Plaintiffs did not sign nor were they asked to sign any client account opening statements.

18.     Despite demands for account statements, Defendants did not provide any statements for any of Plaintiffs' investments from 2010 to the date of this Complaint.

19.     Plaintiffs transferred an initial contribution of $135,000 for an annuity with AXA Equitable/LPL Financial (Certificate No. ending 0328) ("AXA") using funds from Mr. Gorman's inheritance from his grandparents. As a result of not receiving any account statements, Plaintiffs do not recall what happened with that investment and Plaintiffs' email records with Paul Beers/KJM Financial only go back to September 2014.

20.     After the initial AXA investment, Plaintiffs invested in a series of life insurance/disability insurance policies. Based upon Plaintiffs' bank records, Defendants rolled Mrs. Gorman's 401K (from her former employer) into an Allianz Fixed Income Annuity in February 2014.

21.     In April 2016, Plaintiffs began to invest significant funds totaling more than $500,000 with KJM Financial and Paul Beers to purchase various annuities.

22.     The parties' more than 15-year business relationship was based upon a long term personal relationship. Before Plaintiffs became clients of Defendants, Paul Beers was Plaintiffs' daughter's soccer coach in Glen Gardner, NJ -- where he developed a friendship with Mr. Gorman.

23.     Mr. Gorman, Paul Beers and Paul's son also went on to play basketball together on a routine basis at a local recreational center/church. It was only when Plaintiffs required financial advice in 2010 that Paul offered his services to Plaintiffs.

24.     Plaintiffs entrusted Defendants with their finances and also shared with Paul their family's personal struggles/challenges. As such, Paul knew much of Plaintiffs' personal information and Plaintiffs placed their trust and faith in Paul and KJM.

25.     As a personal friend and advisor, Plaintiffs believed Defendants had their family's best interests at heart.

26.     The following is the history of policies/accounts during the relevant time period that Paul S. Beers and KJM Financial served as Plaintiffs' fiduciary and agent:

- Lafayette Life Insurance Co. (Western & Southern Financial Group)
  - Michele L Gorman - Policy No. ending 380
  - Thomas M Gorman Policy No. ending 375 - effective 01/28/2013 with an **outstanding loan balance of $69,661.00.**
  - Lafayette Life Representative: Paul S. Beers

- Allianz Life Insurance Company of North America - Allianz 360 Annuity
  - Michele L. Gorman - Contract No. ending 6276 --effective 02/18/2014 (rolled over funds from 401K plan)
  - **As of 2024, accumulated a value of $590,476.48**
  - **Value at surrender $465,185.80**

- Foresters Life Insurance - Single Premium Whole Life
  - Thomas M. Gorman - Certificate No. ending 611 - effective 03/16/2017 - Single premium payment of $25,000.26 with an **outstanding loan balance of $26,204.54**

- John Hancock Life Insurance with Vitality PLUS - Individual Term Life
  - Michele Gorman – Policy No. ending 7486 - effective 1/25/2019

- Fidelity & Guaranty Annuities & Life Insurance Company of New York
  - T. Michael Gorman - Policy No. ending 3558 - effective 05/23/2022 - **Total account premium paid $102,310.81**

- Fidelity & Guaranty Annuity Performance Pro
  - Michele  Gorman - Policy No. ending 6648 - effective 2/22/2025 - Initial contribution $465,185.80
  - Agent - Paul S. Beers
  - **Current balance $231,844.55**

27.    On February 3, 2017, Paul sent a letter to Plaintiffs summarizing plans to move Plaintiffs' fund from two separate accounts at Lafayette Life and one account at MetLife to re-invest in a diversified portfolio and requested that Plaintiffs complete a monthly budgeting form in preparation for long-term college planning.

### A.  **Theft of Plaintiffs' Funds**

28.    As alleged herein, $586,350.00 in funds belonging to Plaintiffs were paid to Defendants to invest in life insurance annuities and a college fund for Plaintiffs' children. Defendants did no such thing and absconded with Plaintiffs' funds.

29.    To date, $586,350.00 is unaccounted for and presumed stolen by Defendants.

30.    As of February 17, 2024, Plaintiffs' Allianz Annuity Account No. ending 6276 had an accumulated value of $590,476.48.

31.     On January 8, 2025, Paul S. Beers texted Mrs. Gorman asking to discuss the Allianz account.

32.     On January 10, 2025, Paul informed Mrs. Gorman by phone that he wanted to transfer $47,600 from the Allianz account to another annuity account that purportedly had a better return on investment. That same day, Paul withdrew $47,600 from Allianz and directly deposited that sum into Plaintiffs' Chase bank account.

33.     On January 19, 2025, check #893 in the sum of $47,600 was sent to KJM Financial.

34.     On January 22, 2025, that check was deposited by Defendants into a KJM account ending 4300 at PEAPACK-GLADSTONE BANK in Gladstone, NJ.

35.     January 24, 2025, Paul requested Plaintiffs' Allianz account information to begin the process of transferring all remaining funds in the Allianz account to Fidelity & Guaranty Life Insurance of New York ("Fidelity & Guaranty" or "F&G").

36.     On February 7, 2025, Paul asked Plaintiffs to withdraw $37,500 from Allianz. That same day, Plaintiffs withdrew $37,500 from Allianz.

37.     On February 10, 2025, check #894 for $37,500 was sent by Plaintiffs to KJM Financial.

38.     On February 12, 2025, check #894 was deposited by Defendants into a KJM account ending 1100 at PEAPACK-GLADSTONE BANK in Gladstone, NJ.

39.     On February 13, 2025, at the request of Defendants, the full surrender/withdrawal on Allianz Contract No. ending 6276 in the amount of $465,185.80 was transferred to Fidelity & Guaranty.

40.     On February 24, 2025, Plaintiffs received confirmation of $465,185.80 deposited into Fidelity & Guaranty, Annuity Policy No. ending 6648.

41.     The two checks in the sum of $47,600 and $37,500 that were drawn on Plaintiffs' Allianz account and deposited by Defendants were not credited to any of Plaintiffs' accounts.

42.     Plaintiffs' check #893 for $47,600 was deposited by Defendants into a KJM account ending 4300 at PEAPACK-GLADSTONE BANK in Gladstone, NJ.

43.     Plaintiffs' check #894 for $37,500 was deposited by Defendants into a KJM account ending 0119 at PEAPACK-GLADSTONE BANK in Bedminster, NJ.

44.     On May 22, 2025, Paul requested to move funds from Plaintiffs' F&G account to an undefined stock fund.

45.     June 2, 2025, upon Defendants' request, Plaintiffs withdrew $57,500 from F&G and directly deposited that sum into their Chase bank account.

46.     On June 2, 2025, check #900 in same sum total was sent by Plaintiffs to KJM Financial.

47.     On June 3, 2025, that check for $57,500 was deposited by Defendants into a KJM account ending 0123 at PEAPACK-GLADSTONE BANK in Bedminster, NJ.

48.     On June 26, 2025, upon Defendants' request, Plaintiffs withdrew $55,000 from F&G and directly deposited that sum into their Chase bank account.

49.     On June 30, 2025, check #901 for $55,000 was deposited by Defendants into a KJM account ending 3700 at PEAPACK-GLADSTONE BANK in Gladstone, NJ.

50.     On July 11, 2025, upon Defendants' request, Plaintiffs withdrew $25,000 from F&G and directly deposited that sum into their Chase bank account.

51.     On July 16, 2025, check #902 for $15,000 was deposited by Defendants into a KJM account ending 1400 at PEAPACK-GLADSTONE BANK in Gladstone, NJ.

52.     On August 13, 2025, upon Defendants' request, Plaintiffs withdrew $37,500 from F&G and directly deposited that sum into their Chase bank account.

53.     On August 18, 2025, check #903 for $37,500 was deposited by Defendants into a KJM account ending 1100 at PEAPACK-GLADSTONE BANK in Gladstone, NJ.

54.     On October 18, 2025, upon Defendants' request, Plaintiffs withdrew $38,500 and $ 19,250 from F&G and directly deposited that sum into their Chase bank account.

55.     On October 10, 2025 and October 21, 2025 respectively, check #906 for $38,500 and check #907 for $19,250 were deposited by Defendants into a KJM account ending 0043 at PEAPACK-GLADSTONE BANK in Bedminster, NJ.

56.     On October 18, 2025, Plaintiffs sent check #908 in sum total of $10,000 to Defendants for Megan Gorman's college fund per a text from Paul, dated 10/11/2025, that he "could get 5.95% plus a bonus on any new monies we add to her college fund".

57.     To date, there is no record that $232,750 in disbursements by Plaintiffs to Defendants from Plaintiffs' F&G Annuity Policy No. ending 6648 were credited to any of Plaintiffs' accounts held by Defendants.

58.     To date, there is no record of $268,500 in disbursements to Defendants meant to be saved for Plaintiffs' college funds were credited to any of Plaintiffs' accounts held by Defendants.

59.     In sum, $268,500 was invested by Plaintiffs with Defendants for college funding **in addition to** $232,750 in disbursements by Plaintiffs to Defendants from Plaintiffs' F&G Annuity Policy #MZ146648.

60.     Plaintiffs transferred a total of $586,350.00 to Defendants. That entire sum is unaccounted for and presumed stolen by Defendants.

**B. Defendants Abscond With Plaintiffs' Money**

61.     On November 11, 2025, Plaintiffs received an email from Dr. Jessica Ruzicka (POM College Consulting - an unaffiliated third-party) offering Plaintiffs their services as Paul and KJM was no longer supporting client accounts.

62.     On November 21, 2025, Plaintiffs received a second email from Dr. Jessica Ruzicka (POM College Consulting) stating that Paul and KJM were no longer in business and again offering their college planning services.

63.     On November 21, 2025, Plaintiffs called all available phone numbers on file for KJM Financial, including Paul's cell phone, including sending a text to Paul's cell phone that was read within 10 minutes. Plaintiffs did not receive a response.

64.     Plaintiffs also called the phone number for Cindy Stoter (KJM Financial employee). Her outgoing voicemail message simply told people to contact Michael Baldassare with any questions. No reference to who Michael Baldassare was and what questions he could answer.  On this same date, the KJM Financial website (which was still active/accessible in the early part of the day) was taken off the internet later in the afternoon.

65.     On November 21, 2025, Mrs. Gorman called the phone number for Michael Baldassare and spoke to a receptionist who took her name and phone number. When Mrs. Gorman asked what company she had contacted, she was told that it was a law firm in NJ specializing in a business litigation and criminal defense.

66.     On November 25, 2025, Mrs. Gorman left a message for Michael Baldassare, Esq. who called her back and explained that he in no way was obligated to call her back, but felt it prudent to do so since Mrs. Gorman had called multiple times. Mr. Baldassare stated that he did not know why Paul and KJM Financial would refer any of their clients to his office and that he

and his law firm had not granted any approval to do so. While he could not comment any further on the relationship with Paul and KJM Financial, he told Mrs. Gorman that Paul was alive and well. When Mrs. Gorman told him that Paul was Plaintiffs' financial advisor for many years and she asked if she and her husband should seek legal counsel. Mr. Baldassare replied that his initial response would normally be, "no comment", but instead he recommended that "[Mrs. Gorman] should do what [she] thinks [she] needed to do."

67.    Finally, on November 28, 2025, Plaintiffs received a letter from Madeb Law Practice in New York notifying Plaintiffs' of a UCC Lien filed against KJM in the amount of $308,700 owed to creditor En Od Capital.

68.    Plaintiffs are not aware of Paul S. Beers as being anywhere other than NJ. Plaintiffs have tried calling him, his employees and even some of his family members at their cell and home numbers. Plaintiffs have not received a response from anyone -- including his wife, Diane Beers.

69.    Mr. Gorman, in fact, tried to set up a consultation appointment on Friday, November 27, 2025 at 3:30 PM with his Paul's son, Jack Beers, who serves as a Catholic mentor. Plaintiffs received an email confirming the appointment but Jack Beers never phoned Mr. Gorman as scheduled.

70.    Accordingly, Plaintiffs commenced the instant action seeking to recover the funds stolen by Defendants and will be filing an application with the Court seeking a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

### AS AND FOR A FIRST CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

71.    Plaintiffs repeat and reallege each and every allegation above as though they were fully set forth herein at length.

72.    Defendants, as investment advisors and licensed insurance agents, were employed by Plaintiffs in a position of trust and confidence.

73.    Defendants were prohibited from acting in any manner inconsistent with the interests of Plaintiffs and were obligated to exercise good faith and loyalty in performing their duties by not misappropriating Plaintiffs' investment opportunities, specifically funds allocated and paid to Defendants for Plaintiffs' children's college fund and for life insurance annuities to be used by Plaintiffs for their retirement.

74.    Defendants were actively engaged in diverting Plaintiffs' business and investment opportunities as well as Plaintiffs' funds paid to Defendants for their children's college fund and life insurance annuities and breached their fiduciary duty owed to Plaintiffs.

75.    Defendants engaged in the foregoing breach of fiduciary duty and good faith to benefit themselves at Plaintiffs' expense. Defendants did so through wrongful means by not performing their duties owed to Plaintiffs and by misappropriating Plaintiffs' funds for Defendants' sole benefit.

76.    Defendants were directly involved in the theft of Plaintiffs' funds.

77.    By virtue of the duties owed to Plaintiffs, Defendants were prohibited from acting in a disloyal manner, or in any way inconsistent with the fiduciary relationship existing between Defendants and Plaintiffs.

78.    Defendants are legally bound by their duties of loyalty and good faith to Plaintiffs to treat Plaintiffs' personal property and funds paid to Defendants as belonging solely to Plaintiffs.

79.    Defendants breached their fiduciary duties, including the duty of loyalty and good faith, by misappropriating Plaintiffs' funds for Defendants' own account or on account of other third parties, firms and/or entities, and acted contrary to Plaintiffs' interests.

80.    Notwithstanding these obligations and duties, and in violation thereof, Defendants engaged in, *inter alia,* disloyal conduct by misappropriating and retaining Plaintiffs' funds and conspiring to steal Plaintiffs' life savings.

81.    While engaged in the aforesaid conduct, Defendants were paid commissions, bonuses and other benefits, including no less than hundreds of thousands of dollars belonging Plaintiffs to which they were not entitled and for which they are obligated to return to Plaintiffs.

82.    Defendants also blatantly violated their fiduciary duties owed to Plaintiffs by diverting business and investment opportunities belonging to Plaintiffs.

83.    Defendants also breached their fiduciary duties of good faith and fair dealing by, *inter alia*, refusing to account for the misappropriated funds.

84.    By virtue of their relationship and position, Defendants violated their fiduciary duties of loyalty, due care, and confidentiality by: (1) swindling from Plaintiffs their rightful ownership interests and control of the funds transferred to Defendants; (2) refusing to cooperate with Plaintiffs' reasonable requests for the return of their funds or access to the funds and Defendants' financial books and records; (3) converting Plaintiffs' funds for their own use and then taking action in altering records to cover up their tracks; (4) by conspiring together to embezzle funds and falsify records; (5) knowingly laundering funds through KJM and the personal accounts of Paul S. Beers in a joint effort to convert Plaintiffs' funds.

85.    As a result of Defendants' conduct as alleged herein, Plaintiffs suffered and continue to suffer extensive irreparable injury and harm to their finances, and other injuries and damages.

86.    Defendants committed the foregoing actions knowingly, willfully, and in conscious disregard of Plaintiffs' rights under the law.

87.     As a direct and proximate result of Defendants' breach of fiduciary duty, loyalty and good faith, Plaintiffs suffered and will continue to suffer damages, which continue to accrue.

88.     Accordingly, Defendants should be permanently restrained from taking further actions in breach of their fiduciary duties of loyalty and good faith and are entitled to recover actual and exemplary damages in an amount to be determined at trial along with attorneys' fees and costs incurred in litigating this action.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(UNJUST ENRICHMENT)**

89.     Plaintiffs repeat and reallege each and every allegation above as though they were fully set forth herein at length.

90.     Defendants received and retained from Plaintiffs' funds without just compensation to Plaintiffs.

91.     Defendants have refused to make Plaintiffs whole despite Plaintiffs' demands.

92.     By the acts as alleged herein, Defendants made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

93.     As a direct and proximate cause of Defendants' acts as alleged herein, Plaintiffs have suffered irreparable harm and damage and continue to incur monetary damages.

94.     Defendants' acts as alleged herein require that in equity and good conscience they make full restitution to Plaintiffs as a result of being unjustly enriched.

95.     It is against equity and fairness for the Defendants to refuse to return the funds paid to them by Plaintiffs.

96.     The circumstances are such that equity and good conscience require the Defendants to make restitution in the amount due and owing to Plaintiffs.

97.     As a result of Defendants' unjust enrichment, Plaintiffs have sustained, and will continue to sustain, damages.

98.     Wherefore, Plaintiffs demand a temporary restraining order and preliminary injunction to maintain the status quo and a money judgment in an amount proven at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (CONVERSION)

99.     Plaintiffs repeat and reallege each and every allegation above as though they were fully set forth herein at length.

100.    Defendants are jointly and severally liable for conversion as they have wrongfully taken property belonging to Plaintiffs, have deprived Plaintiffs of said personal property as well as any and all income earned on said personal property.

101.    As a direct and proximate result of this breach, Plaintiffs have sustained damages and will incur further damages in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (ACCOUNTING)

102.    Plaintiffs repeat and reallege each and every allegation above as though they were fully set forth herein at length.

103.    Defendants unlawfully obstructed Plaintiffs from examining the present finances, payments, obligations, balances and income arising out of the investment relationship between the parties.

104.    Befitting Defendants' pattern of failing to provide Plaintiffs with even one statement reflecting Plaintiffs' investments with and payment of funds to defendants over a 15 year period, falsifying financial information in an effort to cover their tracks, Plaintiffs cannot be certain that the entirety of Defendants' theft has been uncovered.

105.    Plaintiffs are the rightful owner of a substantial sum of money transferred to Defendants upon misrepresentations that said funds would be invested in Plaintiffs' college fund and life insurance annuities. Thus, Plaintiffs have an unequivocal right to review Defendants' books, records, bank statements and other financial data in an effort to ascertain the financial condition of Defendants and the extent of the theft perpetuated by Defendants upon Plaintiffs.

106.    Accordingly, Plaintiffs are entitled to an accounting of the assets transferred and paid to Defendants, and all associated, break-away, or otherwise-related entities or businesses funded by the assets and revenue thereof.

107.    As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained damages and will incur further damages in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (CONSTRUCTIVE TRUST)

108.    Plaintiffs repeat and reallege each and every allegation above as though they were fully set forth herein at length.

109.    The income, funds and monies held by Defendants as a result of their scheme to divert Plaintiffs' investment opportunities, as well as their theft of Plaintiffs' personal funds as alleged herein, are subject to a constructive trust in Plaintiffs' favor and for the benefit of Plaintiffs.

110.    Defendants are required to account and to turn over such sums held in constructive trust on behalf of Plaintiffs and as directed by this Court.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

a)    Enter judgment for Plaintiffs on all causes of action as set forth in this Complaint;

b)    Enter a restraining order and injunction prohibiting Defendants, their agents, principals, employees, successors, and assigns, and all persons in active concert and participation with Defendants or any of them from accessing

or withdrawing any funds from the accounts of KJM FINANCIAL, LLC, located at Peapack-Gladstone Financial Corporation, and any account connected to or receiving payments on behalf of the foregoing limited liability company;

c)    Enter a restraining order and injunction prohibiting Defendants, their agents, principals, employees, successors, and assigns, and all persons in active concert and participation with Defendants or any of them from falsely representing any or all of Defendants as being connected with Plaintiffs or sponsored by or associated with Plaintiffs or engaging in any act which is likely to cause any banks, life insurance companies, financial institutions, broker dealers and/or members of the retail investment industry to believe that any or all of Defendants are associated with Plaintiffs;

d)    Enter a restraining order and injunction prohibiting Defendants, their agents, principals, employees, successors, and assigns, and all persons in active concert and participation with Defendants or any of them from holding themselves out as attorneys-in-fact and/or purported agents able to legally bind Plaintiffs Michele Gorman and/or Thomas Gorman III, or otherwise acting in any capacity as either or both Plaintiffs;

e)    Enter a restraining order and injunction prohibiting Defendants, their agents, principals, employees, successors, and assigns, and all persons in active concert and participation with Defendants or any of them from selling, transferring or otherwise disposing of the assets of Plaintiffs which have been invested or received, co-mingled or to be received, either by acting individually or through any corporation or other entity that Defendants own, control or operate;

f)    Enter a restraining order and injunction prohibiting Defendants, their agents, principals, employees, successors, and assigns, and all persons in active concert and participation with Defendants or any of them from removing from their premises of either or both Defendants, or discarding, destroying, transferring or disposing in any manner any information, computer files, electronic files, ESI or text messages, business records (including but not limited to e-mail communications) or other documents or communications relating to Defendants' assets, including destroying, altering or spoiling accounting, payment and sales records of Defendants;

g) Enter a restraining order and injunction prohibiting Defendants, their agents, principals, employees, successors, and assigns, and all persons in active concert and participation with Defendants or any of them from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above;

h) Order an accounting of the monies received by Defendants that were wrongfully diverted from Plaintiffs;

i) Award compensatory and enhanced damages to Plaintiffs in an amount to be determined at trial;

j) Awarding Plaintiff pre and post judgment interest;

k) Awarding Plaintiffs punitive damages for the wonton and intentional conduct of Defendants;

l) Award Plaintiffs costs and attorneys' fees incurred in prosecuting this action; and

m) Award such other and further relief as this Court may deem just and proper.

Dated: December 31, 2025
Brooklyn, New York

Respectfully submitted,

**MARZEC LAW FIRM, P.C.**

By:     */s/ Darius A. Marzec*
Darius A. Marzec, Esq.
Attorneys for Plaintiffs
776A Manhattan Avenue, Suite 104
Brooklyn, New York 11222
(718) 609-0303
dmarzec@marzeclaw.com